DARRIN MALSACK,                )

                               )

        Plaintiff,          )

                               )      CIVIL ACTION

vs.                      )

                               )      Case No. 2:26-CV-00452

SOUTH SHORE RE LLC and       )

INSOMNIA COOKIES OPERATORS, LLC,   )

                               )

        Defendants.       )

## **COMPLAINT**

COMES NOW, DARRIN MALSACK, by and through the undersigned counsel, and files this, his Complaint against Defendants, SOUTH SHORE RE LLC and INSOMNIA COOKIES OPERATORS, LLC, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## **JURISDICTION**

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendants' SOUTH SHORE RE LLC and INSOMNIA COOKIES OPERATORS, LLC, failure to remove physical barriers to access and violations of Title III of the ADA.

## **PARTIES**

2. Plaintiff DARRIN MALSACK (hereinafter "Plaintiff") is and has been at all times relevant to the instant matter, a natural person residing in Milwaukee, Wisconsin, (Milwaukee County).

1

3.  Plaintiff is disabled as defined by the ADA.

4.  Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and/or pinching.

5.  Plaintiff uses a wheelchair for mobility purposes.

6.  In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.  Defendant, SOUTH SHORE RE LLC (hereinafter "SOUTH SHORE RE LLC") is a domestic limited liability company that transacts business in the State of Wisconsin and within this judicial district.

8.  Defendant, SOUTH SHORE RE LLC, may be properly served with process via its registered agent for service, to wit:  c/o SK Development Group LLC, Registered Agent, 606 E. Juneau Avenue #511385, Milwaukee, WI  53202.

9.  Defendant, INSOMNIA COOKIES OPERATORS, LLC (hereinafter "INSOMNIA COOKIES OPERATORS, LLC") is a foreign limited liability company that

2

transacts business in the State of Wisconsin and within this judicial district.

10. Defendant, INSOMNIA COOKIES OPERATORS, LLC, may be properly served with process via its registered agent for service, to wit: c/o Corporation Service Company, Registered Agent, 33 East Main Street, Suite 610, Madison, WI 53703.

**FACTUAL ALLEGATIONS**

11. On or about December 11, 2025, Plaintiff attempted to be a customer at "Insomnia Cookies," a dessert shop located at 2217 S. Kinnickinnic Avenue, Milwaukee, WI 53207, referenced herein as "Insomnia Cookies" but was unable to due to barriers. *See* attached Selfie as Exhibit 1.

12. Defendant, SOUTH SHORE RE LLC, is the owner or co-owner of the real property and improvements that Insomnia Cookies is situated upon and that is the subject of this action, referenced herein as the "Property."

13. Defendant, INSOMNIA COOKIES OPERATORS, LLC, is the lessee or operator of the real property and improvements that are the subject of this action.

14. Defendant, SOUTH SHORE RE LLC, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is a lease between Defendant, SOUTH SHORE RE LLC, and a tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations. *See* 28 CFR § 36.201(b).

15. Plaintiff's access to Insomnia Cookies located at 2217 S. Kinnickinnic Avenue, Milwaukee, WI 53207, Milwaukee County Property Appraiser's tax key number 4660805000

3

("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendants are compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

16. Plaintiff lives less than 6 miles from the Property.

17. Given the close vicinity of the Property to the Plaintiff's residence, Plaintiff often travels by the Property.

18. Plaintiff has visited the Property once before as a potential customer and advocate for the disabled. Plaintiff intends to revisit the Property after the barriers to access detailed in this Complaint are removed and the Property is accessible again. The purpose of the revisit is to be a return customer of Insomnia Cookies, to determine if and when the Property is made accessible and to substantiate already existing standing for this lawsuit for Advocacy Purposes.

19. Plaintiff intends on revisiting the Property to purchase food and/or services as a return customer as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

20. Plaintiff travelled to the Property as a potential customer once before as a customer, personally encountered many barriers to access the Property that are detailed in this Complaint, engaged many barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury if all the illegal barriers to access present at the Property identified in this Complaint are not removed.

4

21. Although Plaintiff may not have personally encountered each and every barrier to access identified in Plaintiff's Complaint, Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the Complaint in a subsequent visit as, for example, because Plaintiff was unable to enter the public accommodation, he did not personally encounter barriers to access impacting the restroom, but on his future intended trip after the barriers preventing him from accessing the interior are removed, he can then access the restroom inside Insomnia Cookies for the first time. As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

22. Plaintiff's inability to fully access the Property and the stores in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

<u>COUNT I</u>
<u>VIOLATIONS OF THE ADA AND ADAAG</u>

23. On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

24. Congress found, among other things, that:

(i)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

5

(ii)     historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)     discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)     individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

25.     Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)     provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

* * * * *

(iv)     invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

26.     The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

6

27. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

28. The Property is a public accommodation and service establishment.

29. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

30. Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

31. The Property must be, but is not, in compliance with the ADA and ADAAG.

32. Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property and as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

33. Plaintiff intends to visit the Property again as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property

7

and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

34. Defendants, SOUTH SHORE RE LLC and INSOMNIA COOKIES OPERATORS, LLC, have discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

35. Defendants, SOUTH SHORE RE LLC and INSOMNIA COOKIES OPERATORS, LLC, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants, SOUTH SHORE RE LLC and INSOMNIA COOKIES OPERATORS, LLC, are compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

36. A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

    i.    At the entrance to Insomnia Cookies, due to an approximate 4-inch vertical rise in front of the front door, the Property lacks an access route from site arrival points such as the public streets and sidewalks to the accessible entrance in violation of Section 206.2.1 of the 2010 ADAAG standards. This

barrier to access would make it dangerous and difficult for Plaintiff to access the Property as a customer when using public transportation.

ii. At the entrance to Insomnia Cookies, due to an approximate 4-inch vertical rise in front of the front door, the total vertical rise of accessible route leading from public sidewalk is greater than ½ (one-half) inch and thus, the accessible route is not ramped in compliance with Section 405 or 406, this is a violation of Section 303.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because the vertical rise in the form of stairs would make it almost impossible for Plaintiff to safely access the interior of this public accommodation.

iii. At the entrance to Insomnia Cookies, due to an approximate 4-inch vertical rise in front of the front door, the accessible route leading into this public accommodation contains at least one vertical rise in excess of ¼ inch in violation of Section 303.2 of the 2010 ADAAG Standards. This barrier to access would make it difficult and dangerous for Plaintiff to attempt to utilize the accessible route as it increases the likelihood of the wheelchair tipping.

iv. At the entrance to Insomnia Cookies, due to an approximate 4-inch vertical rise in front of the front door, the maneuvering clearance of the accessible entrance is not level in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access this unit of the Property since it is often necessary for individuals in wheelchairs to need to use their hands to both wheel through the doorway and keep the door open with another hand. When the maneuvering clearance is

not level, this ordinarily difficult process is made even more difficult by the presence of an excessive vertical rise.

v. At the entrance to Insomnia Cookies, the door to the accessible entrance lacks a clear minimum maneuvering clearance due to the fact the end of the latch side of the accessible entrance door being within 18 inches to the adjacent wall in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would cause Plaintiff difficulty in utilizing the door to gain access to this unit because individuals in a wheelchair have their feet and legs sticking out in front of them thus requiring additional space to reach the door hardware and open the door. The current configuration of the accessible entrance of this unit blocks Plaintiff's ability to reach the door hardware and open the door.

vi. At the entrance to Insomnia Cookies, there is a doorway threshold with a vertical rise in excess of ½ (one half) inch and does not contain a bevel with a maximum slope of 1:2 in violation of Section 404.2.5 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the interior of the Property at this location as the vertical rise at the door threshold could potentially cause Plaintiff to tip over when attempting to enter. Moreover, this barrier to access is made more difficult by the fact that it is in the doorway and Plaintiff would be required to hold the door open with one hand while attempt to the "push" the wheel of the wheelchair over the vertical rise.

vii. There is not at least one accessible entrance to each tenant space in the building that complies with Section 404 of the 2010 ADAAG standards which is a violation of Section 206.4.5 of the 2010 ADAAG Standards.

viii. As not all entrances comply with Section 404 of the 2010 ADAAG Standards, entrances that do comply with Section 404 of the 2010 ADAAG Standards are required to have signage identified by the International Symbol of Accessibility indicating an accessible entrance, however, no such signage exists on the Property in violation of Section 216.6 of the 2010 ADAAG Standards. Moreover, there is a lack of directional signage indicating the location of the nearest accessible entrance. This barrier to access would make it difficult for Plaintiff to locate an accessible entrance on the Property.

ix. Defendants fail to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

x. As a result of the barrier to access identified above, there is not an accessible route leading inside the Property to the accessible restroom. Plaintiff attempted to enter the public accommodations but was unable to gain entry. As such, Plaintiff was unable to determine additional barriers to access present in the restroom of either public accommodation. Defendants, therefore, shall be required to provide at least one accessible restroom compliant with Sections 603, 604 and 606 of the 2010 ADAAG standards, or at a minimum, provide an accessible restroom as readily achievable to do so.

37. The violations enumerated above are not a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property. Due to the barriers to

11

access, Plaintiff was completely barred from entering the Property as a customer and will return within six months or sooner after the barriers to access are removed.

38. Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

39. The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

40. All of the violations alleged herein are readily achievable to modify to bring the Property into compliance with the ADA due to the fact the modifications necessary to cure the barriers to access identified in paragraph 36 of this Complaint are listed within 28 C.F.R. § 36.304 as readily achievable.

41. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

42. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendants, SOUTH SHORE RE LLC and INSOMNIA COOKIES OPERATORS, LLC, have the financial resources to make the necessary modifications as the appraised value of the Property is $726,400.00.

43. The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendants have available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction available from the IRS for spending money on accessibility modifications.

12

44.    While the Property may fall under qualified historic properties, all of the barriers to access identified in this Complaint can be removed and/or mitigated with modifications and adoption of policies which do not threaten the historical significance or character of the Property.

45.    Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendants, SOUTH SHORE RE LLC and INSOMNIA COOKIES OPERATORS, LLC, are required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

46.    Plaintiff's requested relief serves the public interest.

47.    The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendants, SOUTH SHORE RE LLC and INSOMNIA COOKIES OPERATORS, LLC.

48.    Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendants, SOUTH SHORE RE LLC and INSOMNIA COOKIES OPERATORS, LLC, pursuant to 42 U.S.C. §§ 12188 and 12205.

49.    Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendants, SOUTH SHORE RE LLC and INSOMNIA COOKIES OPERATORS, LLC, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)    That the Court find Defendants, SOUTH SHORE RE LLC and INSOMNIA COOKIES OPERATORS, LLC, in violation of the ADA and ADAAG;

13

(b) That the Court issue a permanent injunction enjoining Defendants, SOUTH SHORE RE LLC and INSOMNIA COOKIES OPERATORS, LLC, from continuing their discriminatory practices;

(c) That the Court issue an Order requiring Defendants, SOUTH SHORE RE LLC and INSOMNIA COOKIES OPERATORS, LLC, to (i) remove the physical barriers to access and (ii) alter the subject Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d) That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e) That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: March 19, 2026.                    Respectfully submitted,


Law Offices of
THE SCHAPIRO LAW GROUP, P.L.

/s/  Douglas S. Schapiro
Douglas S. Schapiro, Esq.
State Bar No. 54538FL
The Schapiro Law Group, P.L.
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com


14